E. Furstenau *v.* H. Hackfeld *et al.*

SUPREME COURT—IN BANCO.

OCTOBER TERM, 1882—IN EQUITY.

*Judd, C. J., McCully and Austin, J.J.*

E. FURSTENAU *vs.* H. HACKFELD ET AL.

ON APPEAL.

THE PLAINTIFF AND DEFENDANTS entered into partnership September 1, 1871, as general shipping and commission merchants, agents and importers, and continued business till August 31, 1878, when they dissolved, the defendants continuing the business. By the retiring agreement the plaintiff still held in the assets of the firm a nominal interest of $69,314.70. These assets were mainly of accounts due from sugar plantations and their owners. Accounts current were to be kept up by the defendants, and interest in current account were to be credited to plaintiff at 6 per cent. Twenty-five thousand dollars was written off on a "Reserve account" to cover unforseen losses. The contract provides for payment of plaintiff's balances in four equal payments, provided the losses are not greater than the $25,000 reserved. The facts show that the supposed losses far exceeded the $25,000 ;

HELD, under the contract, that defendants had a right to write off these supposed losses, believed by them to be final, for the purposes of periodical accounting and to conform accounts current thereto ; and that, so made up, the account showed that plaintiff had been largely overpaid the amount of principal due him. ;
70

HELD, further, that the retiring agreement authorizes defendants to make advances, in their discretion, to carry on plantations on which debts are due, and to incorporate or buy plantations if they judge best, and to make other changes in order to save or collect sums due, and such acts and changes do not accomplish the collection of debts till the same are actually realized in cash. But,

HELD, that interest under the contract is payable semi-annually upon balances shown by accounts current kept, and the amount so shown due can be recovered here, and,

HELD, that sums of principal and interest paid or withheld are subject to revision on final accounting.

Opinion of the Court by AUSTIN, J.

This case comes before us on appeal from the decision in equity by the Vice Chancellor, Mr. Justice McCULLY, against the plaintiff and appellant. The relief sought was in the nature of an accounting between partners, and a claim that by such an accounting a balance of about $30,000 would be found due to the plaintiff from the defendants, for which a decree was asked. No relief was granted.

Upon the appeal new evidence was taken, and we are now to examine the issue anew.

The plaintiff and defendants entered into partnership at Honolulu on the 1st day of September, 1871, as General Shipping and Commission Merchants, Agents and Importers, and continued the partnership until the 31st day of August, 1878, when the same was dissolved by mutual consent, and the plaintiff retired from the firm, having executed a retiring agreement bearing date on that day, whereby the business was to be continued by the defendants. The interest of the plaintiff in the business assets of the firm was one-sixth and of the defendants five-sixths.

By the terms of the retiring agreement it was provided, among other things, that the books should be closed on August 31, 1878, that "all outstanding debts, such as book accounts, bills receivable, mortgages and all other valuable matters, are to be carefully examined, and 'after writing off losses that may be expected or are made,' are to be carried forward as balances,

E. Furstenau *v.* H. Haskfeld *et al.*

so that at any future time ' they may be stated,' and there can be no doubt whether the claims have their origin before or after August 31, 1878. A part of this, the sum of $25,000, is to be written off on a 'Reserve account,' in order to cover losses which may occur, and not foreseen."

" After all accounts are regulated in above manner, and the balances carried forward, the result obtained shall be regarded as the capital of the late partners on August 31, 1878, in which Mr. F. has one-sixth share."

This provision of the contract was carried out, and the one-sixth share of the plaintiff in the capital was thereby ascertained, and agreed to be $69,314.70. The main part of this capital consisted of accounts against sugar plantations and their owners.

Payments were made to the plaintiff from time to time on his share, and current accounts were rendered to him by the defendants; and up to and including March 15, 1880, the date of the last account rendered, the share of the plaintiff in the capital had been reduced, mainly by cash payments, to the sum of $30,295.67. No account was thereafter rendered to the plaintiff except this action.

In the accounts, as so presented to the plaintiff, little if any of the assets constituting the capital had been written off as losses. But in the evidence and exhibits now before the Court the defendants claim that large losses of portions of those assets have occurred, much greater than the reserve fund of $25,000, which the plaintiff is proportionally obliged to bear, and that so small a part of the balance of those assets has been paid, and the residue thereof remains so uncertain and insecure that as a matter of fact the plaintiff has been already largely overpaid his fair proportion of assets realized and made secure, and that therefore there is nothing now due him either of principal or interest; and the defendants claim that they have the right to determine, under the contract, whether accounts unpaid are secure, and that their determina-

tion shall be binding in the plaintiff for the purpose of an accounting between him and them.

The clauses of the contract which bear upon these points are as follows:

"The partners remaining in the firm assume Mr. Furstenau's share and dispose of it 'as they may agree upon it among themselves only.' Mr. E. Furstenau makes over all and every claim to the assets and liabilities of the firm to the resuming partners.

"The partners remaining in the firm bind themselves to Mr. E. F. to collect, wind up or secure as far as possible, with greatest care and conscientiousness, the outstanding accounts ascertained on August 31, 1878, such as book debts, bills, mortgages and other claims of the firm in order to be enabled as soon as possible to pay Mr. E. F. his share in the property of the late firm.

"Until the whole of the outstanding debts and claims are collected or completely secured, all partners interested before September 1, 1878, remain responsible for the due payment and complete securement of same, *pro rata*, of their share.

"Until the complete winding up and securement of the outstanding claims, of whatsoever kind, a current account is to be kept with Mr. E. F. from September 1, 1878, in which he is to be credited with six per cent. per annum, until the settlement of the said outstanding claims. The payment of his share in the capital shall be made to Mr. E. F. as follows: One-fourth September 1, 1878; one-fourth March 1, 1879; one-fourth September 1, 1879; one-fourth March 1, 1880.

"'Provided there are no further losses arising than are covered by the above-mentioned sum of $25,000,' to be written off on reserve account. As soon as the said reserve account can be regulated, *i. e.*, 'so soon as it is shown that losses arising out of the claims before September 1, 1878, do not reach the reserved amount of $25,000, Mr. F.'s share in the balance of the said reserve account shall be paid out to him.' Interest

E. Furstenau *v.* H. Hackfeld *et al.*

an current account shall be remitted semi-annually to Mr. E. F. at Bremen, until the account is closed.

"It is agreed that the moneys that may be due E. Furstenau of his share may be paid to him sooner than above stated, if the partners that remain in the firm and enter as new members declare that they regard all outstanding claims as secured."

The following clause of the partnership agreement of the present firm bearing date July 21, 1881, also relates to these points:

"All assets and liabilities of the late firm are to be assumed by the above-named partners on September 1, 1881, with all legal liabilities, advantages and disadvantages, as they shall be ascertained by the balance sheet which shall be drawn on August 31st, next. Those profits and losses, which shall be ascertained until August 31st, "a." "c.," are to be for account of the late partners. In this connection it is agreed that (A) the stock of merchandise is to be assumed at a fair valuation, etc., and (B) that of the plantation accounts, those of Olowalu, of Armstrong & Pratt, and Lilikoi plantation account of Chr L'Orange, are to be excluded."

In considering the powers of the defendants under these provisions, it must be borne in mind that the defendants and their new partners have five-sixths to the plaintiff's one-sixth interest in the assets to be collected and secured; and in the absence of fraud it is to be assumed that every act of theirs relative to those assets would, in their best judgment, be done for the purpose of helping to realize the payment of the whole thereof for the benefit of all concerned.

Furthermore, it is in proof that the plaintiff is living in Germany, where he went after the retiring contract was made, and has since resided there, and has not returned. If any question arose as to what to do to secure or collect any of the capital assets, the plaintiff was not at hand to consult about it. And we hold after reading all the provisions bearing on the points, that the plaintiff intended to grant the power to the

E. Furstenau *v.* H. Hackfeld *et al.*

defendants and their associates to act in the absence of proof of fraud or gross negligence, as though his personal consent were given to all they did.

We also hold that, for the purposes of accounting between the parties, the defendants had the right to mark off debts they deemed lost, and thereby to withdraw those amounts from the aggregate capital to be divided. They could judge better of this than the plaintiff. He could not possibly personally know anything about it. He granted to them his right to act in the premises. Of course he still retains his share in any claims so marked off, and any future unexpected collections will be subject to a division with him, until a final settlement shall be made.

The plaintiff claims that much more of the assets have been collected than is admitted by the defendants.

1st. The plaintiff claims that certainly when the changes in the partnership of July 21, 1881, were made, the paragraphs we have above quoted from the contract then made, constitute, aside from the plantation accounts therein specially excluded, a sale of the whole of the capital assets in which he has a share to the new firm, and thereby that the whole were substantially collected.

We think this is clearly untenable. The letting in of new partners was agreed to by the plaintiff.

The plaintiff asks an accounting as to the sums paid in by the new partners if any and claims to be allowed for his part of it. This cannot be done. Incidentally he has the advantage of the funds paid in if any for they make it more sure, that advances will continue to be made if thought best, in order to try to secure the payment of his share in the outstanding assets.

2d. Account "B" as designated in the opinion of the Vice Chancellor, when the plaintiff retired stood at $61,437.50. The plaintiff claims that it is collected in full.

Upon this point new evidence was taken before us. The

plantation upon which this debt rested was incorporated since the last account rendered to the plaintiff, and some of the stock was sold for cash and the amount paid over to the defendants. But it was sworn that all sums paid in and realized were credited for the benefit proportionally of the plaintiff, and we see no reason to doubt this, or that the balance unpaid stands as shown.

The retiring contract provides that " all surpluses over the advances made after the 31st of August, 1878, for the purposes of carrying on the plantations and securing the advances made before that date, shall be credited as payments on account, until the whole of the outstanding claims are settled, or may be regarded as perfectly secured."

The plaintiff would seem to claim that the defendants had no right to judge where to make such advances, and that when made they were at the defendants' risk. This is not so. The plaintiff also claims that by incorporating the plantation, and selling the stock, the defendants in effect, by the change in their security collected the whole debt. We do not think so. We think the clauses from the contracts which we have quoted authorized the incorporating of the plantation, for the purpose of trying to secure the outstanding debt, and that the evidence, though meagre and not specific shows, as we have said, that the plaintiff and the defendants have received an equal proportional benefit therefrom.

3d. The plaintiff claims that the account designated "*e*" of $63,385.66 must be considered collected, because although it still stands unpaid in whole yet the defendants have made large advances so that the debt now stands at $565,984.47, and now, since this suit was begun, have bought half the plantation at the price of $110,000. The plaintiff's counsel quotes from the original contract which provides that real estate or plantation property shall not be purchased without the consent of all the partners, and says this covenant has been violated, and so the debt must be deemed collected.

The evidence shows that the advances and investment were made because of and with reference to the collection of the original debt. It was made for the benefit of the plaintiff as well as of the defendants, and any profits arising from the purchase or sums received out of the plantation in any way, after first canceling all new advances made to carry on the plantation for the benefit of the parties hereto must then apply on the original debt. We think the retiring agreement gives full power to the defendants to bind the plaintiff by such a purchase made with such an object for similar reasons to those above given to justify other similar facts. For like reasons to those stated, the plaintiff's counsel demands that accounts "c" $33,224.22 and "j" $31,331 shall be treated as paid in full.

With regard to both of these the defendants determined what to do, according to their best business judgment for the benefit of themselves and the plaintiff. If any loss of the original debt occurs thereby he must bear his share. He cannot expect the defendants to take all risks, and if anything is thereby gained to divide it with them, and if anything is lost, (not of their own advances that they stand alone, but) of the first debt, that the defendants shall stand it all. This would be the height of unfairness. The plaintiff cannot "eat his cake and have it too."

On considering the whole case we find no evidence of fraud, or negligence on the part of the defendants, or anything to show that they have not, as the contract with the plaintiff requires proceeded to "collect, wind up or secure, as far as possible, with greatest care and conscientiousness, the outstanding accounts ascertained on August 31, 1878, in order to be enabled as soon as possible to pay Mr. E. F. his share in the property of the late firm."

On the contrary, we think that those acts which the plaintiff criticises were done in the utmost good faith to aid to accomplish a speedy settlement in full with the plaintiff.

E. Furstenau *v.* H. Hackfeld *et al.*

On looking over all the accounts it appears to us that the items marked off are properly so marked, and concededly they far exceed the amount held in reserve ; and that the items left are properly held not yet fully secured, and that the sums collected are comparatively so small that the payment of principal to the plaintiff have been much greater than he could have required to be made, and that in justice there is nothing of principal due him.

The retiring contract provides as quoted above, that " until the whole of the outstanding debts and claims are collected or completely secured, all partners interested before September 1, 1878, remain responsible for the due payment and complete securement of some *pro rata* of their shares."

Under this clause it is possible, in case of unexpected and disastrous losses, that the plaintiff may have to return to the defendants some of the moneys he has received upon account.

The question as to whether the plaintiff is not entitled to the payment of interest is one of more difficulty. As is said by the plaintiff's counsel, conditions are annexed to the specific undertaking, to pay principal, but none are attached to the undertaking to pay interest. The contract says : " Interest in current account shall be remitted semi-annually until the account is closed."

The interest to be paid is only six per cent. The interest chargeable upon the capital by the defendants is much greater. There is nothing to show or properly to imply, we think, that this remittance of interest is to depend upon the collection of interest upon the capital. We think it must be presumed that the defendants were bound to take the risk of periodical remittals of interest.

Upon account designated "a.," now standing at $234,920.35, which is an increase the defendants say that there was struck out and allowed by them to the debtor nearly the sum of sixteen thousand dollars interest due, to encourage the debtor

to greater exertions towards the liquidation of the debt.

We think this was properly done ; but the claim of the defendants' counsel that this sum allowed should be applied first as against the plaintiff, to his demand for interest, we think was not intended by the contract.

It should be applied to the capital, as being a part of a debt written off like the other case of writing off debts referred to.

The defendants' counsel further claims that if interest were due, and were absolutely agreed to be paid, it might have been recovered at law.

We think this is so. We think, however, that there was a good reason for bringing this action in equity. More than two years had passed since the ultimate time fixed for the payment of the plaintiff's entire demand, subject to the condition above mentioned. No information as to the condition of the account had been furnished the plaintiff except that conveyed by letter dated September 11, 1880, marked Exhibit "J," which was not a detailed account, not intended as such, nor account-current had been given to the plaintiff since March 1, 1880, and no interest had been paid since then.

On application to the defendants by Mr. Jaeger, the authorized agent of the plaintiff, for an account it was refused, on the ground that such an account would divulge the secrets of the firm, and the agent was informed that there was nothing due the plaintiff of principal or interest. Against these refusals, the previous denial of defendants' desired interviews by the plaintiff in Bremen has little weight. That denial occurred after the refusal of the defendants to pay anything on either principal or interest, and we cannot say that it was not excusable.

We think the defendants' ground for refusal to account was untenable. The plaintiff then had a right to an account. If the bill was properly brought, and there is anything due the plaintiff under well-established rules of equity, he is entitled to his decree for it with costs.

E. Furstenau *v.* H. Hackfeld *et al.*

We therefore think that the plaintiff is entitled to a decree that the defendants pay him interest on his proportion of capital as shown by the last definite account furnished him on March 1, 1880, down to March 1, 1882, and since then to September, 1882, on his proportion of capital after deductions made as shown in Exhibits " G." " J." " H. " on file.

And the defendants should continue to furnish semi-annual accounts current to the plaintiff until the final settlement between them.

E. Preston and F. M. Hatch for plaintiff.

A. S. Hartwell for defendants.

Honolulu, December 11, 1882.

OPINION OF MR. JUSTICE McCULLY.

The Court in effect confirms the judgment given in the first instance, except in the matter of the payment of interest, and thereupon ordering an account to be taken to ascertain what amount of interest may be due.

The clauses in the retiring agreement regulating the payment of interest are in these words: "Until the complete winding up or securement of claims of whatever kind they may be there will be kept a running account with E. Furstenau from September 1, 1878, and six per cent. interest shall be credited to him up to the settlement of the above mentioned claims. * * * * Until the closing of this account (of the assets) the interest shall be remitted semi-annually to E. Furstenau to Bremen."

The precise intention of the parties in these clauses of their contract must be ascertained by examination not only of the words before us, but of the context of the whole instrument. We have seen that this was, in brief, to this effect, viz., a statement of the debts then due the firm, that E. Furstenau owned one-sixth of them, that the remaining partners would with discretion and diligence collect the amounts as far as they could, and would remit to E. Furstenau his share of

what they actually collected, he to suffer his share of the loss of such accounts as were lost. It was supposed there would be losses, but the owners of the five-sixths did not make themselves responsible for any loss to the owner of the one-sixth. These amounts were chargeable with interest, and the interest from September 1, 1878, was kept separate and one-sixth part was to be credited to E. Furstenau up to the settlement of the above mentioned claims.

Now a "settlement" of the claims may be by a total loss a partial realization and quittance, or payment in full. It must be considered that the agreement contemplates this, and that certain of the accounts "c" "d" and "g" have been "settled" by total loss. Until settlement, the house charged the debtor parties and credits E. Furstenau in his account, and by the agreement is to remit it semi-annually. It will be granted I think that the defendants are not bound to pay interest after the principal has disappeared, and it must also be considered that they are not to pay interest although it has been charged up to the debtor and credited in E. Furstenau's current account for a considerable period of time before the hope of collection is abandoned and the account written off as a loss.

If in a case of this kind they shall appear to have remitted in excess of what proves to be good principal, I hold them not bound to remit till interest has accrued in excess of the deficit. If there might be some difficulty in keeping the current account exactly paid up, I should hold that on the final settlement with E. Furstenau he shall be paid only his share of actual realizations made and interest on them at six per cent.

I cannot take the view that the account stated at E. Furstenau's retirement from the firm is to be treated as his capital, on which he is to have six per cent. interest, without regard to what the firm may realize.

The higher rates charged on the accounts is the compensation of the firm for managing the business.

E. Furstenau *v.* H. Hackfeld *et al.*

With this expression of my views in addition and some-what qualifying what is written by the Court, I sign the opinion.

---

### SUPPLEMENTAL OPINION.

On further consultation, and after hearing the counsel for the respective parties in reference to the terms of the decree to be entered herein, we find that there was a misapprehension among us as to the amount of interest required to be now paid for the two years from March 1, 1880, to March 1, 1882, As the decree has not been entered, we still have the control of it to correct such an error.

And we modify the order therefor in that respect, and direct that such interest shall be paid upon such sum or sums of principal as appear in the defendants' accounts on file after writing off supposed losses during said two years in pursuance of the contract, as shown in said accounts.

If the supposed losses, so written off, shall finally be found to be actual losses, and the plaintiff should now receive interest for said two years, as directed by such unmodified order for a decree, he would be obliged at the final accounting to pay back the surplus of interest so received by him ; and if such supposed losses shall finally be collected in whole or in part, the plaintiff must then receive, if he has not already received it, the interest which ought to have been paid to him on the sums so collected. So by the change in the order now made, the plaintiff sustains no substantial injury.

We therefore direct that an accounting be had, if found necessary, to fix the sum of interest to be paid, and that when adjusted a decree be entered for that sum with costs.

A. FRANCIS JUDD.
BENJ. H. AUSTIN.

· Honolulu, January 24, 1883.